IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DISTRICT

IN THE MATTER OF THE SEARCH OF

APPLE IPHONE, MODEL NO. A1428; IMEI
NO. 013435006453552

LG FLIP PHONE, MODEL NO. LG5500;
MEID NO. 268435460001706536

SAMSUNG GALAXY S II, MODEL NO.
SGH-T989, IMEI 357930/04/410357/7

GARMIN GPSMAP 196, SERIAL NO.
65402996

CURRENTLY LOCATED AT 709 SE
CATAWBA ROAD, PORT CLINTON, OHIO
43452

Case No. 3:14 M J 5055

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Michael R. LaLonde Jr., being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—

electronic devices—which are currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

2.      I am a Border Patrol Agent with the U.S. Department of Homeland Security,

United States Customs and Border Protection, United States Border Patrol, and have been so

assigned since August 2, 2010.  Your affiant has been trained in the laws of search and seizure at

3:14 MJ 5055

the Border Patrol Academy in Artesia, New Mexico.  Moreover, I have utilized my training on many instances in my career as a Border Patrol Agent.  The affiant has experience investigating violations of the Immigration Laws of the United States as well as State and Federal narcotics statutes.  Furthermore, affiant has arrested several hundreds of individuals for violations of the Federal Immigration Laws of the United States and State and Federal narcotics statutes.  Affiant has successfully prosecuted aliens for immigration statutes in both Toledo and Cleveland, Ohio and has experience in searching for evidence of said violations.  Affiant has attended and graduated from the U.S. Border Patrol Academy in December, 2010 in Artesia, New Mexico.

3.    The facts in this affidavit come from your affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.    The items to be searched are:

  a.  Apple iPhone, white and silver in color, Model number A1428; IMEI number 013435006453552; FCC ID BCG-E2599A; and further described by IC: 579C-E2599A;

  b.  LG flip phone, gray in color, Model number LG5500, MEID: 268435460001706536, Serial Number 010CYGW0242527; and

  c.  Samsung Galaxy S II, black in color, Model Number SGH-T989;IMEI: 357930/04/410357/7; FCC ID A3LSGHT9889.

2

3 - 14 MJ 5055

    d.   Garmin GPSmap 196, black in color, Serial number: 65402996.

5.    Collectively, these cellphones are hereinafter referred to as the "Devices."

6.    The Devices are currently located at the U.S. Customs and Border Patrol,

Sandusky Bay Station, 709 SE Catawba Rd., Port Clinton, Ohio 43452.

7.    The applied-for warrant would authorize the forensic examination of the Devices

for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

8.    On 8/29/14, shortly after 0010 hours, Border Patrol Agents identified a low-flying

aircraft in the vicinity of Erie-Ottawa International Airport in Port Clinton, Ohio. Shortly

thereafter, an agent observed a small airplane land at the airport. Agents encountered the pilot,

Ryan Harold BRANDT, and passenger, Kathryn Anne ADAMSON, in the aircraft. After first

having denied just arriving at the airport, BRANDT later stated that the flight originated in

Windsor, Ontario, Canada and came directly to Port Clinton, Ohio. BRANDT said that he did

not check in with Customs. BRANDT admitted to illegally entering the United States and later

to bringing ADAMSON into the United States illegally. Agents then arrested BRANDT and

ADAMSON for having entered the United States unlawfully.

9.    ADAMSON was later found to be in possession of approximately 860

acetaminophen tablets marked as containing Codeine, a Schedule III substance. ADAMSON

later said the tablets were to distribute to her elderly friends in the United States to use as pain

relievers.

3

3. 14 MJ 5055

10.     BRANDT was in possession of an Apple iPhone, white and silver in color, Model number A1428; IMEI number 013435006453552; FCC ID BCG-E2599A; and further described by IC: 579C-E2599A.

11.     ADAMSON was in possession of two cellphones:

   a.   LG flip phone, gray in color, Model number LG5500, MEID: 268435460001706536, Serial Number 010CYGW0242527; and

   b.   Samsung Galaxy S II, black in color, Model Number SGH-T989;IMEI: 357930/04/410357/7; FCC ID A3LSGHT9889.

12.     The 1975 Cessna aircraft utilized in this smuggling scheme was found to contain an aftermarket GPS navigation unit identified as a Garmin GPSmap 196, black in color, further identified by serial number: 65402996. Upon seizure of the aircraft, the navigation system was removed and placed into CBP seized property storage.

13.     After having been advised of Miranda rights, BRANDT and ADAMSON admitted to Border Patrol Agents the following, although not verbatim:

14.     BRANDT was aware of the fact that ADAMSON was an alien without permission to enter, be, or remain in the United States when he transported ADAMSON from Canada into the United States in his personal aircraft. BRANDT admitted that he flew below altitude that would create a radar signature in order to evade detection. BRANDT admitted to planning the trip into the United States for at least two weeks, choosing Port Clinton, Ohio as the best place to smuggle ADAMSON into the United States and abscond without detection.

4

15.    BRANDT Admitted to Border Patrol Agents that he contacted his father, CB, and ADAMSON via telephone in order to make arrangements to smuggle ADAMSON into the United States.  ADAMSON also admitted to speaking with BRANDT via phone three times in the hours before their flight.

16.    On 08/29/2014 at approximately 7:30AM, ADAMSON provided signed consent to search forms to Border Patrol Agents for two cell phones in her possession.  Agents conducted a cursory search of her Samsung Galaxy S II.

17.    On 08/29/2014, at approximately 10:30AM, BRANDT provided a signed consent to search form for his white/silver iPhone further described by IMEI: 013435006453552 and printed the four digit unlock code for the phone on the consent form and initialed next to the code.  Agents did not conduct a cursory search of BRANDT's iPhone.

18.    Although consent to search forms were obtained by Agents for the three phones, a warrant is being sought out of an abundance of caution in order to search the full contents of all three telephones.

19.    In my training and experience, I have learned that alien smugglers and human traffickers commonly use cellular telephones as a means of communication between themselves and their superiors within the criminal organization in the furtherance of the crimes they are committing. Alien smugglers and human traffickers commonly allow the illegal subjects under their control to make phone calls to family members and/or relatives to arrange meeting places and pick ups of these subjects in order to avoid detection of law enforcement agents and officers. Further, I am aware that stored incoming/outgoing telephone numbers, stored telephone

3:14 MJ 5055

numbers, text messages, stored photos, and any other stored information and data are relevant and could contain fruits of the crime and assist the ongoing federal investigation and current case involving Kathryn Anne ADAMSON and Ryan BRANDT.  BRANDT has advised your affiant that BRANDT used a cell phone while transporting illegal aliens from Windsor, Ontario, Canada to Port Clinton, Ohio.

20.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored on this Apple iPhone for periods, incident to, and following their transmission.

21.     A GPS device was located in the airplane (Garmin GPSmap 196, black in color, further identified by serial number: 65402996).  GPS devices are utilized to navigate and track a course while in travel.  It is believed that the navigation system currently seized will contain data related to the flight path or route of travel taken to further the criminal activity in which BRANDT and ADAMSON were engaged just prior to their arrest.

22.     The Devices are currently located at the U.S. Customs and Border Patrol, Sandusky Bay Station, 709 SE Catawba Rd., Port Clinton, Ohio 43452.  In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the

extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the CBP.

## TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

3 : 14 M J 5055

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved

8

3 : 14 MJ 5055

in such navigation.  The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite

contains an extremely accurate clock.  Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special

sequence of numbers.  These signals are sent by radio, using specifications that

are publicly available.  A GPS antenna on Earth can receive those signals.  When

a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and

sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing

computer programs.  Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail.  PDAs

usually include a memory card or other removable storage media for storing data

and a keyboard and/or touch screen for entering data.  Removable storage media

include various types of flash memory cards or miniature hard drives.  This

removable storage media can store any digital data.  Most PDAs run computer

software, giving them many of the same capabilities as personal computers.  For

example, PDA users can work with word-processing documents, spreadsheets,

and presentations.  PDAs may also include global positioning system ("GPS")

technology for determining the location of the device.

9

3:14 MJ 5055

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique
numeric address used by computers on the Internet.  An IP address is a series of
four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).
Every computer attached to the Internet computer must be assigned an IP address
so that Internet traffic sent from and directed to that computer may be directed
properly from its source to its destination.  Most Internet service providers control
a range of IP addresses.  Some computers have static—that is, long-term—IP
addresses, while other computers have dynamic—that is, frequently changed—IP
addresses.

g.  Internet: The Internet is a global network of computers and other electronic
devices that communicate with each other.  Due to the structure of the Internet,
connections between devices on the Internet often cross state and international
borders, even when the devices communicating with each other are in the same
state.

24.     Based on my training, experience, and research, I know that the Devices have
capabilities that allow them to serve as wireless telephones, digital cameras, portable media
players, GPS navigation devices, and PDAs.  In my training and experience, examining data
stored on devices of this type can uncover, among other things, evidence that reveals or suggests
who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

26.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

11

3:14 MJ 5055

    d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Devices described in Attachment A to seek the items

described in Attachment B.


                                        Respectfully submitted,


                                        Michael R. LaLonde Jr.
                                        Border Patrol Agent
                                        United States Border Patrol


Subscribed and sworn to before me
on September 4, 2014:

UNITED STATES MAGISTRATE JUDGE


13